## Case No. 1,230.

### BEERS et al. v. HAUGHTON.

[1 McLean, 226.][1]

Circuit Court, D. Ohio. July Term, 1834.[2]

INSOLVENCY — DISCHARGE — OBLIGATION OF CONTRACTS —IMPRISONMENT ON JUDGMENT — BAIL— ACTION ON RECOGNIZANCE—PLEADING — COURT RULES.

1. Where defendants in a judgment can show that they have been released under the insolvent laws of the state, and that the debt or judgment formed a part of their schedule, they cannot, under a rule of the court, be imprisoned on the judgment.

2. The insolvent laws may be adopted by a rule of court, under the process act of 1828, [4 Stat. 278, c. 68.]

[See Dobbin v. Allegheny, Case No. 3,941.]

3. Where the defendants are not liable to be imprisoned on the judgment, the special bail is not bound to surrender them in his discharge.

4. To an action on the recognizance of bail, he may plead the discharge of his principals under the insolvent laws of the state.

[See Byrne v. Carpenter, Case No. 2,271; Richardson v. McIntyre, Id. 11,789.]

5. These laws cannot affect the proceedings in the federal courts, unless they are adopted as rules of proceeding.

[See Gray v. Munroe, Case No. 5,724.]

6. A state has a right, in regulating the remedy, to protect from imprisonment, insolvents. Such laws affect the remedy only, and do not in any respect impair the contract.

[See Gray v. Munroe, Case No. 5,724; Mason v. Haile, 12 Wheat. (25 U. S.) 370; Vial v. Penniman, 103 U. S. 714.]

7. A law which relieves from the contract cannot be enforced against non-residents of the state; or in cases where the contract was prior to the law.

[See note at end of case.]

[At law. Action of debt by Joseph D. Beers, William L. Booth, and Isaac R. St. John against Richard Haughton on the recognizance of special bail. Plaintiffs demur to a plea of defendant. Demurrer overruled. Subsequently affirmed by the supreme court in Beers v. Haughton, 9 Pet. (34 U. S.) 329.]

Chester & Caswell, for plaintiffs.

Mr. Fox, for defendant.

OPINION OF THE COURT. An action was brought by the plaintiffs in 1830, against Joseph Harris and Cornelius V. Harris, and judgment for 2818 dollars and costs, was entered at December term. In this suit the defendant Haughton became special bail, and bound himself that the Harris's, should a judgment be recovered against them, should pay the judgment, or render themselves to the marshal. A capias ad satisfaciendum was issued upon the judgment in October, 1831, to the marshal, which he returned that

the defendants were not to be found. At the same term this court adopted a rule "that if a defendant upon a capias, does not give sufficient appearance bail, he shall be committed to prison, to remain until discharged by due course of law. But under neither mesne nor final process, shall any individual be kept imprisoned, who under the insolvent law of the state, has for such demand been released from imprisonment." In February, 1831, Cornelius V. Harris was discharged from imprisonment for all his debts, under the insolvent law of the state; and in February, 1832, Joseph Harris was also discharged. The plaintiffs in December, 1832, commenced an action of debt on the recognizance of special bail. In the declaration, the proceeding in the suit against the Harris's, and the return of the ca. sa. non est are set out. Among other pleas, the defendant sets up the discharge of the Harris's under the insolvent law of Ohio, and the rule of the court as above stated, in bar of the action. The plaintiffs demurred to this plea, and a joinder being filed to the demurrer, the sufficiency of the plea is presented for the decision of the court.

In the Revised Laws of Ohio, (volume 22, p. 58,) it is enacted, "that after the return of the capias ad respondendum, the defendant may render himself, or be rendered, in discharge of his bail, either before or after judgment; provided such render be made at or before the appearance of the first scire facias against the bail returned scire feci, or of the second scire facias returned nihil, or of the capias ad respondendum, or summons in an action of debt against the bail on his recognizance, returned served; and not after." This act was passed in 1824, and was in force when the act of 1828 [4 Stat. 278, c. 68,] was passed by congress, adopting the "modes of proceedings" in actions at common law, established in the state courts. Under this law and the practice of this court, the special bail had a right to discharge himself by a surrender of the principals any time before the writ, on the recognizance was returned served, or the return of the second scire facias nihil. And this is the rule of the common law. It is said that the bail are fixed on the return of the capias ad satisfaciendum non est; but it will be found that they have, though it is said to be a matter of favor, until the return of the scire facias served, or the alias writ nihil, within which to surrender their principal. So that the bail are not fixed, unconditionally, till the return of the writ as above stated. Mannin v. Partridge, 14 East, 599.

By the insolvent law of Ohio, of 1824, it is provided "that the certificate of the commissioner of insolvents, duly obtained, shall entitle the insolvent, if in custody upon mesne or final process in any civil action, to an immediate discharge therefrom. upon his complying with the requisites of the act;

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in Beers v. Haughton, 9 Pet. (34 U. S.) 329.]

and that the final certificate of the court of common pleas, duly obtained, shall protect the insolvent for ever after from imprisonment for any suit or cause of action, debt or demand mentioned in the schedule given in under the insolvent proceedings; and a penalty is inflicted on any officer who shall knowingly and wilfully arrest, in any civil proceeding such discharged insolvent." This act is repealed by the insolvent law of 1831, but the same provisions, as above stated, are contained in the repealing law.

In support of the plea, it is contended that the Harris's, having been discharged under the insolvent law, and as the schedule they exhibited contained the debt on which the plaintiffs obtained their judgment, that they are not liable to be imprisoned on said debt or judgment. That had they been in imprisonment on the judgment when the benefit of the act was extended to them, they must have been immediately discharged. That they are protected from arrest, by the laws of the state, under a heavy penalty, for any debt contained on their schedule, and that under such circumstances the bail cannot be required to surrender them in his discharge. That the law requires nothing to be done in vain, and that to surrender the original defendant, would be in vain, as they could not be held in imprisonment, but must be immediately discharged. That to attempt to make the surrender would subject the bail to an action of trespass, as it would any officer who should knowingly arrest them.

On the part of the plaintiffs, it is contended, that it appears from the pleadings that neither of the original defendants were discharged under the insolvent law, until after judgment in the circuit court. That Joseph Harris was not discharged until after the return of the ca. sa. and that the rule of court set out in the plea was not adopted until after the return of that execution. That the plaintiffs' right, therefore, was fixed by the judgment, or by the judgment and the execution, against the bail, and that no mode of discharge subsequent to this can be adopted which shall affect this right. It is insisted that the insolvent laws of the state cannot be enforced by the courts of the United States, and that such laws or a discharge under them cannot affect the proceedings in those courts. That the act of congress of 1828 does not adopt these laws, or authorize the court by rule to adopt them. That the discharge of the defendant from his recognizance under the state law, would be in conflict with the decisions of the supreme court in the case of Ogden v. Saunders, 12 Wheat. [25 U. S.] 369; Shaw v. Robbins, in a note to the case, and Boyle v. Zacharie, 6 Pet. [31 U. S.] 643.

As before remarked, the bail were not fixed, absolutely, until the return of the scire facias served on the second writ nihil. And within this time, the bail, not as a matter of favor, but as a matter of legal right, could surrender their principal and claim a discharge. This is the law of Ohio. And is it adopted by the act of 1828, and the rule of court? The act in terms adopts in the federal courts the same "modes of proceeding" in the federal courts, as in the state courts. Now is not the surrender of the principal by the bail, a mode of proceeding? In the case of Wayman v. Southard, 10 Wheat. [23 U. S.] 1, the supreme court decided that the terms 'process,' and 'modes of proceeding in a suit,' embraced the whole progress of such suit and every transaction in it, from its commencement to its termination, and until the judgment should be satisfied. The words of the act of 1828 are, "the forms of mesne process, and the forms and modes of proceeding," shall be the same as in the state courts. And these words embodied in a different statute having the same object in view, received the above construction by the supreme court. Now there was no right fixed against the bail on the return of the ca. sa. so that the rule of court in no sense affected a vested right, but merely changed or modified the remedy. The power of the court to adopt the rule seems to be clear, under the third section of the above act. It provides "that writs of execution and other final process, issued on judgments and decrees, rendered in any of the courts of the United States, and the proceedings thereon, shall be the same, except their style, in each state respectively, as are now used in the courts of such state; provided, however, that it shall be in the power of the courts, if they see fit in their discretion, by rules of court, so far to alter final process in said courts as to conform the same to any change, which may be adopted by the legislatures of the respective states for the state courts." The rule adopted did nothing more than in effect to conform the process against the body, to the mode of proceeding in the state courts, on the same process. It might well be contended that this proceeding may be sustained under the act of 1828, independently of the rule; but the law authorizes the court to make such alterations as shall conform to the state practice.

A state law, as it regards the proceedings of the courts of the United States, can only be in force, by the adoption of congress or under their authority. If then the defendants to the original judgment, having been discharged under the insolvent laws of the state, were not liable to be imprisoned on such judgment; it would be worse than solemn mockery to require them to be surrendered, as the condition on which the special bail shall be discharged. Why require their surrender when they cannot be held in confinement? The law can never require an act to be done, so useless and absurd. Mannin v. Partridge, 14 East, 599; Olcott v. Lilly, 4 Johns. 407; Boggs v. Teackle, 5 Bin. 332; 18 Johns. 335; 9 Serg. & R. 24. But it is said that a discharge of the defendant, will conflict with the decision of the supreme court

in the case of Ogden v. Saunders, [supra.] In this case the court decided that a state. bankrupt or insolvent law, which discharges both the person of the debtor, and his future acquisitions of property, is not "a law impairing the obligation of contracts," so far as respects debts contracted subsequent to the passage of such law. But that a certificate of discharge under such law, cannot be pleaded in bar of an action brought by a citizen of another state in the courts of the United States, or of any other state than that where the discharge was obtained. It is true that Mr. Justice Johnson, in giving the opinion of the court in this case, calls the law under which the question was raised an insolvent law; but it was a law which not only relieved the party from imprisonment, but also his future acquisitions from liability. This was then substantially a bankrupt law. In the case of Boyle v. Zacharie, 6 Pet. [31 U. S.] 643, Mr. Justice Story, in giving the opinion of the court, says—"the first point presented for argument, and indeed that which was the principal ground of the appeal, is, as to the effect of the discharge under the insolvent act. This question is of course at rest, so far as it is covered by the antecedent decisions made by this court." And he refers to the decision in the case of Ogden v. Saunders, and observes—"so far then as decisions upon the subject of state insolvent laws have been made by this court, they are to be deemed final and conclusive."

The insolvent law referred to in this case, like the one involved in the case of Ogden v. Saunders, discharged the party from the contract. That the mere imprisonment of the debtor as a means of enforcing the payment, belongs to the remedy and does not reach the contract, has been often decided, and is so clear a proposition that no one will controvert it. And the supreme court have often decided that a state insolvent law, which exonerates the debtor from imprisonment, does not impair the obligation of the contract, but is within the legislative power of a state, which modifies the remedy at its discretion within its own jurisdiction. The counsel for the plaintiffs suggest, though they do not seem to urge the point with confidence, that the recognizance of bail was a contract with the plaintiffs, who are citizens of New York, and in which the bail agreed that the defendants should surrender themselves or pay the money, and to discharge the bail, without such surrender or payment under the state insolvent law, impairs the obligation of the contract. The undertaking of the bail is a part of the remedy, and rests on the ground that the plaintiff has a right to imprison the defendant, in satisfaction of his judgment. This is shown by the necessity the plaintiff is under to issue an execution against the body of the defendant, before he can proceed against the bail. The defendant, by giving special bail, places himself in the custody of his bail, who is bound to have him to answer the writ of the plaintiff. Or the bail, under the laws of this state, may surrender the defendant, at any time, as a matter of right, before he is fixed by the proceeding against him. Now this undertaking of the bail is a part of the remedy for the enforcement of payment. And if the plaintiff has no right to imprison the defendant, how can he demand him by execution, or make the bail responsible for not surrendering him? It is true the plaintiff may not know that the defendant has taken the benefit of the act, and as the discharge may be taken advantage of by plea or on motion, it may not be improper for the plaintiff to sue out a ca. sa.; but the question is, can he imprison a defendant who has been discharged? Clearly he cannot; and it follows as a necessary consequence if he cannot imprison him, that the bail is not bound to make the surrender. Suppose the judgment against the Harris's had been entered before one of the state courts, does any one doubt that they would have been discharged from imprisonment, by virtue of their proceeding under the insolvent law?. And that their bail would have been also discharged on the same ground? This will hardly be controverted. And yet such a proceeding would as much impair the obligation of the contract, as. the proceeding in the present case. In fact no contract is impaired; the state law relieves from imprisonment by a modification of the remedy, and this the state has a right to do, as the supreme court have solemnly decided.

The principles decided in the case of Ogden v. Saunders, [supra,] and of Boyle v. Zacharie, [supra,] have no application to the present case. Both of those cases turned upon the ground that the statute relieved from the contract. But in the present case the remedy only is affected. The plaintiffs, under the circumstances of the case, have no right to imprison the defendant as a means of enforcing the payment of the judgment; and consequently they have no right to demand his surrender by the special bail. The plea is sustained and the demurrer overruled— judgment for the defendant.

NOTE, [from original report.] This case was removed by writ of error to the supreme court, where the judgment of the circuit court was affirmed. [Beers v. Haughton,] 9 Pet. [34 U. S.] 329.

[NOTE. In delivering the opinion of the supreme court, Mr. Justice Story said:

["By the rules of the circuit court of Ohio, adopted as early as January term, 1808, the liability of special bail was provided for and limited; and it was declared that special bail may surrender their principal at any time before or after judgment against the principal, provided such surrender shall be before a return of a scire facias executed, or a second scire facias nihil, against the bail. And this in fact constituted a part of the law of Ohio at the time when the present recognizance was given; for in the Revised Laws of 1823-24 (22 Laws Ohio, 58) it is enacted that, subsequent to the return of the capias ad respondendum, the defendant may render himself or be rendered in discharge of his bail, either before or after judgment, provided such render be made at or before the

appearance day of the first scire facias against the bail returned scire feci,' or of the second scire facias returned nihil, or of the capias ad respondendum or summons in an action of debt against the bail or his recognizance returned served, and not after. This act was in force at the time of the passage of the act of congress of the 19th of May, 1828, (chapter 68,) and must, therefore, be deemed as a part of the 'modes of proceeding' in suits to have been adopted by it; so that the surrender of the principal by the special bail within the time thus prescribed is not a mere matter of favor of the court, but is strictly a matter of legal right. * * * Where the bail were entitled to be discharged, ex debito justitiae, they may not only apply for an exoneretur by way of summary proceeding, but they may plead the matter as a bar to a suit in their defense. But, where the discharge is matter of indulgence only, the application is to the discretion of the court, and an exoneretur cannot be insisted on except by way of motion. And this leads us to remark that where the party is, by the practice of the court, entitled to an exoneretur without a positive surrender of the principal, according to the terms of the recognizance, he is, a fortiori, entitled to insist on it by way of defense, where he is entitled, ex debito justitiae, to surrender the principal. Now, the doctrine is clearly established that where the principal would be entitled to an immediate and unconditional discharge, if he had been surrendered, there the bail are entitled to relief by entering an exoneretur, without any surrender. * * * And, a fortiori, this doctrine must apply where the law prohibits the party from being imprisoned at all, or where, by the positive operation of law, a surrender is prevented. So that there can be no doubt that the present plea is a good bar to the suit, notwithstanding there has been no surrender, if, by law, the principal could not, upon such surrender, have been imprisoned at all. * * *

["There is no doubt that the legislature of Ohio possessed full constitutional authority to pass laws whereby insolvent debtors should be released, or protected from arrest or imprisonment of their persons, on any action for any debt or demand due by them. The right to imprison constitutes no part of the contract, and a discharge of the person of the party from imprisonment does not impair the obligation of the contract, but leaves it in full force against his property and effects. * * * State laws cannot control the exercise of the powers of the national government, or in any manner limit or affect the operation of the process or proceedings in the national courts. The whole efficacy of such laws in the courts of the United States depends upon the enactments of congress. So far as they are adopted by congress, they are obligatory; beyond this, they have no controlling influence. Congress may adopt such state laws directly by a substantive enactment, or they may confide the authority to adopt them to the courts of the United States. * * *

["The present case does not depend upon the provisions of the acts of 1789 or 1792, but it is directly within and governed by the process act of the 19th of May, 1828, (chapter 68). That act, in the first section, declares that the forms and mesne process and the forms and modes of proceeding in suits at common law in the courts of the United States held in states admitted into the Union since 1789 (as the state of Ohio has been) shall be the same in each of the said states, respectively, as were then used in the highest court of original and general jurisdiction in the same, subject to such alterations and additions as the said courts of the United States, respectively, shall, in their discretion, deem expedient, or to such regulations as the supreme court shall think proper, from time to time, by rules, to prescribe to any circuit or district court concerning the same. The third section declares that writs of execution and other final process issued on judgments and decrees rendered in any courts of the United States, and ' the proceedings thereupon,' shall be the same in each state, respectively, as are now used in the courts of such state, etc.; provided, however, that it shall be in the power of the courts, if they see fit, in their discretion, by rules of the court, so far to alter final process in such courts as to conform the same to any change which may be adopted by the legislature of the respective states for the state courts. * * * The rule of the circuit court is in perfect coincidence with the state laws existing in 1828; and, if it were not, the circuit court had authority, by the very provisions of the act of 1828, to make such a rule, as a regulation of the proceedings upon final process, so as to conform the same to those of the state laws on the same subject."]