May Term,
1850.

WHITEHEAD
v.
CUMMINS.

## WHITEHEAD v. CUMMINS.

An execution issued upon a judgment, after the death of the defendant, is void.

C., the owner of real estate, married, there being, at that time, judgments against him, binding his real estate. Subsequently, additional judgments were rendered against him, being also liens on his real estate, upon which latter judgments, executions were issued. C. then died. After his death, said real estate was sold by virtue of the executions on said previous judgments, the purchaser bidding and paying the full value of the property, with an understanding, by all parties concerned, that the money so bid and paid was to be applied—first, in payment of said elder, and, secondly, of said junior, judgments; and the money was so applied. *Held*, that the purchaser should have been subrogated to those elder judgment-creditors, as against the widow of C., and that she would be compelled to contribute to the payment of said elder judgments or receive dower in the residue only of the real estate over and above the amount of said judgments.

The executor of an insolvent estate should not apply the personal assets first to the redemption of incumbered real estate for the benefit of the widow.

*Wednesday,*
*May 29.*

ERROR to the *Jefferson* Circuit Court.

PERKINS, J.—This was an application, by bill in chancery, for dower in lands of *David Cummins*, deceased, made in the *Jefferson* Circuit Court, by *Ann D. Cummins*, his widow.

The proceeding was against *Jesse Whitehead*, a pur-

chaser of the lands at sheriff's sale. The case presented by the record, is as follows:

The marriage of Mrs. *Cummins* with her deceased husband, *David*, from which originates her claim to dower, took place on the 20th day of *July*, 1841. At that time said *David* was indebted about 20,000 dollars; for about 10,000 dollars of which there were mortgages by, and judgments against, him, which were liens on the lands out of which his widow is now asking dower. Subsequently, additional judgments were obtained against him, which were also liens on the lands. On the 23d of *July*, 1844, being after the marriage, he conveyed, his wife not joining in the deed, said lands to *J. D. F. Lanier* and *O. S. Pitcher*, in trust, for the payment of his debts. In *August* following he died. Before his death, there were eight executions against him in the hands of the sheriff of *Jefferson* county, issued upon judgments above mentioned, and a part of which were formally levied on the lands in question. There were, likewise, judgments upon which executions had not issued. The executions in the hands of the sheriff amounted, in the aggregate, to over 5,000 dollars, and two of them, at least, were upon judgments older than the marriage; but one of these two, having been issued after *Cummins's* death, was void. *The State* v. *Michaels*, 8 Blackf. 436. On the 26th of *October* next following *Cummins's* death, the sheriff, having previously advertised, proceeded to offer all of said lands for sale under executions so held by him. The attorney of Mrs. *Cummins*, being present and having the control of the valid execution which overreached the marriage, and the only valid one in the sheriff's hands so doing, forbade a sale upon it. One of the trustees to whom the property had been conveyed as above mentioned for the payment of the debts; the executor of the last will of *Cummins*; Mr. *Marshall*, the attorney of his widow; Mr. *Bright*, who owned from 8 to 10,000 dollars of the liens; and *Whitehead*, who became the purchaser, were present at and before the sale. Immediately preceding its commencement, it was publicly announced by the trustee

present, and by the executor of *Cummins's* will, that, if 14,500 dollars were bid for the whole of the property, the trustees would join with the sheriff in a deed for the whole to the purchaser, and that the proceeds of the sale should be applied to the extinguishment of all incumbrances on the property, so that the purchaser should have a clear deed to the same, except that the dower of the widow, if any she had, should not be prejudiced by the sale; but that the purchaser should take the lands subject to the same dower-right that she would have if no sale took place. The sheriff made the same announcement in his offer of sale. No objection was made to the proposition by any one, and, under it, *Jesse Whitehead*, the defendant below to this suit, became the purchaser of all the lands at the price of 17,600 dollars, being a liberal price for the same. *Whitehead* paid the purchase-money to the trustees, who applied it to the payment of the executions in the sheriff's hands, and all the other liens on the property, according to the proposition at the sale, and, as well as the sheriff, executed a deed to the purchaser. The sheriff's deed recites the eight executions in his hands at the time of the sale. Afterwards, *Whitehead* assigned Mrs. *Cummins* dower, which she refused to accept, and thereupon made her application to the Circuit Court. She had been offered, and agreed to take, from a rival bidder to Mr. *Whitehead*, 2,500 dollars for her dower, if said bidder obtained the property, and of this fact *Whitehead* had notice. There were but about 1,500 dollars of personal assets, which, with the 17,600 dollars received for the real estate, were insufficient to pay *Cummins's* debts. The widow, Mrs. *Cummins*, elected to take dower instead of the provision for her in her husband's will. Upon these facts, the controversy was and is, to what dower is the widow *Cummins* entitled? She claims the full one-third part of the real estate. *Whitehead* denies her right to that extent. The Circuit Court decreed her full dower.

The argument upon which her claim is based and was allowed in the Court below, is, that the sheriff's sale

May Term,
1850.

WHITEHEAD
v.
CUMMINS.

was upon executions on judgments younger than the marriage and did not divest her of any right; and that the older incumbrances being afterwards paid off by *Cummins's* estate, let her into full dower in the lands.

If the premises of her argument are true, her conclusion is correct. They may be true in point of form, but are they really so in substance? The sheriff's sale was upon executions on judgments younger than the marriage, and the prior incumbrances were in form paid by the trustees of *Cummins's* estate; but whose money was it equitably, in point of fact, that paid those older incumbrances? How shall the transactions at the sale be regarded? We put out of the question the deed of the trustees made, subsequently to the sale, to *Whitehead.* It amounted to nothing. It conveyed nothing, for the reason that it could convey nothing. The sale by the sheriff was upon judgments that overreached the trust-deed, and divested the trustees of title. None remained, after that sale, in them. Their deed, therefore, could be no consideration for any purchase-money. How are the bid of *Whitehead,* his payment of the money to the trustees, and their application of it to the satisfaction of the older liens, to be viewed? Had *Whitehead,* knowing there were incumbrances to the amount of 10,000 dollars upon the property, older than the judgments upon which he was purchasing, bid 7,600 dollars instead of 17,600, paid the 7,600 to the sheriff, received his deed, and then proceeded to the clerk's office with his remaining 10,000 dollars, and discharged the anterior incumbrances, there would have been no doubts as to whose money paid off those incumbrances. It would have been *Whitehead's.* Instead of such a course, however, as *Whitehead* is about to buy the property, the trustees say to him, in lieu of bidding 7,600 dollars, and paying 10,000 additional into the clerk's office, bid 17,600 dollars, pay the money to us, and we will pay it into the clerk's office in discharge of the same incumbrances to which you would apply it, and the transaction shall not affect the question of dower, but leave it the same as though you paid the money into the

clerk's office yourself. Now, whose money, in equity and good conscience, was this in the hands of the trustees? Did it belong unqualifiedly to *Cummins's* estate? If so, the trustees might have applied it as they pleased, paid junior debts with it, and left *Whitehead* to pay the 10,000 dollars over again, to save his purchase. Could they have done so? They did not do so, nor could they legally or equitably have done so. It was in substance *Whitehead's* money that paid the elder liens, and the case stands, in equity, as though he had paid them himself.

Such being the case, could *Whitehead* be subrogated to those elder mortgage and judgment-creditors, or regarded as their equitable assignee, so as to compel the widow of Mr. *Cummins* to contribute to the payment of said incumbrances or take a proportionally less amount of dower? If he could, we think, considering the price he paid for the property in question, and the circumstances under which he made the purchase, that justice demands that he should; for though it is said that dower is to be favored, it is not meant, we think, that it should be so at the expense of others' palpable rights.

Had those prior incumbrances been all mortgages, there would have been no difficulty in the case. The widow would have been compelled to contribute, or submit to an abatement of dower; 4 Kent, 46.—R. S. ss. 89, 91, p. 429; and this, without the purchaser's procuring an assignment of the mortgages. *Cass* v. *Martin*, 6 N. H. 25.—*Popkin* v. *Bumstead*, 8 Mass. 491.—*Gleason* v. *Dyke*, 22 Pick. 390. And see *Swain* v. *Perrine*, 5 John. Ch. R. 482. But a part of those prior incumbrances were mortgages, and, as to them, therefore, the widow should redeem. The mortgages to *Bright* and *Hubbard*, and to *Hillis*, were anterior in date to the marriage, and a large sum was due upon them.

Now, where is the difference in principle between a judgment and a mortgage? One is a general, the other a specific lien; but both are equally liens; both, when existing at the marriage, overreach the dower-right; both are equally debts to be paid out of the estate of the per-

son against whom they exist; and both must alike be discharged by an heir, a dowress, or a purchaser, to redeem the incumbered estate. And it may be questionable whether it was not the design of our statute, above cited, rather to recognise an equitable principle applicable to all incumbrances, than simply to declare a rule, already existing, as to mortgages. ˉ Had the judgments in this case been assigned to *Whitehead*, the case would have been clear of difficulty. But why, in equity, should the assignment or non-assignment affect the case where the intention of the person paying is the same in either case? *Whitehead* was compelled to pay the judgments whether they were assigned or not, and he could not compel the holders to assign them. As we have seen, it is immaterial whether a mortgage be assigned or not. Why should a judgment differ? Indeed, the original counsel for Mrs. *Cummins*, in his argument, puts the judgments and mortgages upon the same footing. But we do not rest the case upon this ground. Here, it was, we think, the understanding of all parties that *Whitehead* should have the benefit of these elder liens whether assigned or not. It was probably the understanding of Mrs. *Cummins;* for the highest price asked by her for her dower in the property, worth, as appears by the record, clear of dower, considerably over 20,000 dollars, was 2,500 dollars, and of this she had caused *Whitehead* to be notified. It was the understanding of the executor of *Cummins's* will; of the trustees for the payment of his debts; of the officer who made the sale to *Whitehead;* of the creditors to the amount of 10,000 dollars, if not of all of them; and it was the express condition upon which *Whitehead* purchased. Can there be any doubt, under these circumstances, where the equity of the case lies? Indeed, they are more than sufficient to bring it within the doubting opinion, which doubts, as appears from what has been said, we are inclined to regard as ill-founded, of the chancellor, in the case of *Sanford* v. *McLean*, 3 Page, 117.

This leads us to the inquiry, what was the extent of the right of dower, in this case? It is not one difficult to de-

termine. At marriage, Mrs. *Cummins's* right of dower attached to all the real estate of her husband, subject to all incumbrances then existing, and which should not be removed prior to his decease. In the present case, then, her dower in the lands described is to be limited to the value of those lands, over and above the incumbrances on them at the time of her husband's death which were placed there before marriage. This is the dower to which, we think, equity entitles her, and to which *Whitehead* bought subject. This she must take, or contribute ratably, according to the established rules of law, to the discharge of those incumbrances.

By a clause in *Cummins's* will, he gives to his wife a certain lot of ground, then held in trust for her by *O. S. Pitcher*. It is contended by *Whitehead's* counsel that, in electing to take dower, the widow was bound to relinquish this lot to the estate which she did not do. We do not think she was required to do so. It appears that this lot was conveyed to *Pitcher*, in trust for her, by a third person, not by *Cummins*. He does not appear to have ever had any interest in the lot. The will, as to that, conveyed nothing. Her title to it is not under the will.

It is said that the executor of *Cummins's* will should have applied the personal assets to the redemption of the real estate for the benefit of the widow. In *Gibson* v. *Crehore*, 5 Pick. 146, it is held that the executor of an insolvent estate should not so apply the personal assets.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with instructions to assign dower in accordance with this opinion, &c.

*M. G. Bright* and *M. C. Eggleston*, for the plaintiff.

*J. G. Marshall, J. Sullivan, J. D. Glass*, and *J. W. Chapman*, for the defendant.