# THE CITY OF CHICAGO

*v.*

# JAMES McGINN.

1. NAVIGATION—*navigable streams—erection of bridges across them—of the relative rights in respect thereto.* As has been announced by this court, the true doctrine is, relative to the constitutional power of a State over the navigable waters lying within its jurisdiction, that the right of free navigation of such waters is not inconsistent with the right of the State to provide means of crossing them, by bridges or otherwise, provided such bridges do not essentially injure their navigation. The right to navigate these waters, and the right to cross them by bridges, are co-existent, and neither can be permitted to destroy or essentially impair the other.

2. FORMER DECISIONS. The case of *The Illinois River Packet Company* v. *The Peoria Bridge Association*, 38 Ill. 467, is cited in support of this doctrine, and commented upon by the court at length.

3. NAVIGATION—*rivers above the ebb and flow of the tide—not deemed navigable by the common law.* By the common law, rivers are not deemed navigable above the ebb and flow of the. tide. And in the sense of the common law, which obtains in full force in this state by legislative enactment, neither the Mississippi, Illinois nor Chicago rivers is a navigable stream.

4. WATER COURSE—*the fee of such portion of a river as is measured by the width of the street—is in the corporation.* As this court has said, the fee in the streets of a city is vested in the corporation. Bridges are but streets or highways, over water; the fee, therefore, of such portion of the river as is measured by the width of the street of which the bridge forms a part, is likewise in the corporation.

5. NAVIGATION—*navigable streams—right to bridge them.* This being so, it is competent for the corporation to devote such portion of the river to any use which, in the judgment of its authorities, shall be deemed most promotive of the public interests, subject only to the easement for navigation.

6. BRIDGES—*corporation possesses the power to regulate.* The power to build bridges, being a necessary power, and expressly granted to a corporation, the power to regulate them—to prescribe the time and manner of vessels passing through them—is a necessary incident of that power.

7. CHICAGO—*power of the common council to regulate the bridges—ordinance of April 22d,* 1867—*valid.* By the charter of the city of Chicago, authority is conferred upon the common council, to pass ordinances regulating the time and manner of vessels passing through the bridges which cross the Chicago river; and the ordinance of the city, for such purpose, passed April 22d, 1867, is valid, being a proper and reasonable exercise of that power.

8. NAVIGATION—*power of the States over navigable waters, exclusively within their jurisdiction.* Neither under the power granted by the States to congress to regulate commerce with foreign nations and among the several States and with the Indian tribes, nor under any other provision of the constitution, or of any act of congress, has this power of the States over the navigable rivers exclusively within them, to render them useful for their domestic purposes, been surrendered, or designed to be surrendered.

APPEAL from the Superior Court of Chicago; the Hon. WM. A. PORTER, Judge, presiding.

The facts in this case are fully stated in the opinion of the court.

Mr. S. A. IRVIN, for the appellant.

Messrs. SPAFFORD & McDAID, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The question presented by this record, arises upon an ordinance passed by the common council of the city of Chicago, entitled "An ordinance regulating the time and manner of vessels in passing through the swing bridges over the Chicago river and its branches," passed April 22, 1867.

The ordinance is as follows:

*Be it ordained by the Common Council of the City of Chicago:*

SECTION 1.   That the Board of Public Works of said city be, and they are hereby, required to provide, construct and arrange at the several bridges over the Chicago river and its branches, in the best and most practicable manner, vessel signals, as required by section two of this ordinance.

SEC. 2.   Said signals shall be of material of a red color for use in the day time, and shall be of such size, and so placed, when elevated, that they may be readily seen up or down the river.   The signal for the night time shall be a red lantern, of such size, and so placed and arranged, when elevated, as to be seen easily up or down the river.

SEC. 3.   It shall be unlawful for the owner or owners, officer or officers, or other person or persons in charge of any vessel or vessels navigating the Chicago river or its branches, or any part thereof, to attempt to pass any of the bridges over the said river or its branches while said signal or signals are up or elevated, or to approach so near to any of said bridges at such times as that the same may be injured or damaged, or while the said bridges or any of them may be opening or closing.

SEC. 4.   Bridge tenders or persons in charge of the bridges shall not close the same against vessels seeking to pass through, until passengers, teams or vehicles have been delayed fully ten minutes by the bridges being open.

SEC. 5.   Whenever, between the hours of six o'clock in the morning and seven o'clock in the evening, persons, teams or vehicles have been delayed at said bridges fully ten minutes, by reason of said bridges being open for vessels to pass, it shall be the duty of the bridge tenders or other persons in charge of the bridge or bridges to display said signal, and immediately close the same and keep the same closed for fully ten minutes, for such persons, teams or vehicles to pass over, if so much time shall be required, when the same shall be opened again and kept open (if necessary for vessels to pass)

for the like period, and so on alternating (if necessary) during the hours aforesaid.

SEC. 6. Any person or persons who shall violate any of the provisions of this ordinance, in addition to being chargeable with whatever damage may result to the city by reason of any such violation, shall also be subject to a penalty, for each and every such violation, of one hundred dollars; and in case the same person or persons violate such provisions, or any of them, a second or more times, in addition to the penalty or fine authorized as aforesaid, the court, before which the trial is had, may also imprison such offender or offenders not exceeding three months, in the City Bridewell or House of Correction.

SEC. 7. It shall be the duty of the Harbor Master, under the direction and supervision of the Comptroller, immediately after this ordinance takes effect, to cause the same to be printed in the form of handbills or posters, in such numbers as said Comptroller may deem necessary, and distribute the same among the owners, officers and others having charge of tugs and vessels, as far as practicable, and also to the bridge tenders or persons in charge of the bridges.

SEC. 8. It shall also be the duty of the Harbor Master, so far as in his power, to see that the provisions of this ordinance are fairly and faithfully observed, and when necessary, he shall call on the Superintendent of Police for aid to enable him so to do.

SEC. 9. This ordinance shall be in force and take effect from and after its passage and due publication.

The action was brought by the city before the police court, for the penalty incurred by a violation of the third section of the ordinance. A judgment was rendered in favor of the city for the penalty imposed by the sixth section, and an appeal taken by the defendant to the superior court of the city, in which court, on a trial by jury, under instructions from the court, a verdict was found for the defendant, and judgment for costs was rendered against the city.

270          CITY OF CHICAGO *v.* McGINN.          [Sept. T.,

Opinion of the Court.

To reverse this judgment, the plaintiff brings the record here by appeal.

The questions presented are, have the common council authority to pass any ordinance regulating the time and manner of vessels passing through the bridges erected over and across the Chicago river, and, if they have this power, is the ordinance above cited a proper and reasonable exercise of the power?

Appellee takes the ground, that the ordinance is void for want of power in the common council, under the charter of the city, to pass it; and further, if the common council acted in pursuance of the charter, then the charter in that regard is unconstitutional and void, and consequently, the ordinance is void.

The points made involve the constitutional power of the legislature over navigable rivers wholly within the limits of this State.

This subject received the deliberate consideration of this court in the case of *The Illinois River Packet Co.* v. *The Peoria Bridge Association*, 38 Ill. 467, in which the power was affirmed, and nothing has been shown since to induce a change of opinion.

It was there said, the right of free navigation of the Illinois river was not inconsistent with the right of the State to provide means of crossing the river, by bridges or otherwise, provided such bridges do not essentially injure the navigation of the river. The right to navigate them, and the right to cross them by bridges, are co-existent, and neither can be permitted to destroy or essentially impair the other. These remarks equally apply to other navigable rivers.

And remarking upon the provision of the ordinance of 1787, that the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free as well to the inhabitants of the territory as to the citizens of the United

States, and without any tax, impost or duty therefor, it was said there was no restriction on the power of the State, if the ordinance was yet in force, to use the most improved artificial means of crossing those waters. The ordinance only prohibits its obstruction and the imposition of a tax or duty on its navigation. Nothing less than a total obstruction by dams, or other impediments of that nature, would be a violation of its provisions. Navigation upon them would not then be free, for the very current itself would be in custody, and mankind be thereby excluded from its profitable use. That it does not mean that the river and its navigation shall be a common highway, free from all and every condition, but only that it shall be free from obstruction and free from any burden imposed in the shape of a duty or tax.

And in remarking upon the peculiar position of Chicago upon its little river, it was then asked, has any one advanced the idea that those bridges, furnished with capacious draws for the passage of vessels, materially obstruct its navigation, or if they do, have not all yielded to the necessity of their erection? How could the business and intercourse of that great and growing city be carried on without these facilities; and while the navigation of the river is not subjected to any tolls or duties, who has a right to complain of these structures?

Some of these questions are answered now, for the first time, by the defense set up in the court below, and urged here, that these bridges are a material obstruction and subject navigation to great delay and peril.

In that case, it was also said, that mere delay in passing these bridges, which prudence would advise at unpropitious moments when winds and currents are not favorable, can not, in our judgment, affix to them the quality of a material obstruction, or of any other description of obstruction, for the erection of which the owners should be liable in damages. It is a matter of necessity, that the franchise of navigation should be constrained to meet the exigency, and yield some

of its asserted rights for the sake of works of such great public utility.

In addition to what was said in the above cited case, we might say, that neither the Illinois, the Mississippi, nor the Chicago rivers is a navigable stream in the sense of the common law, which obtains in full force in this State by legislative enactment. No rivers, by the common law, are deemed navigable above the ebb and flow of the tide. The stream above belongs to the riparian proprietors on each side of it, *ad filum aquæ. Middleton* v. *Pritchard,* 3 Scam. 510. The same doctrine was reiterated in the late case of *Ensminger* v. *The People ex rel. City of Cairo,* 47 Ill. 384.

This being so, the water and the bed of the Chicago river are the property of the riparian owners, subject only to an easement in the public, for the purposes of navigation. The fee in the streets of the city have been held by this court to be vested in the corporation. *Canal Trustees* v. *Havens,* 11 Ill. 554, and to the same point is *Hunter* v. *Middleton,* 13 ib. 50.

Bridges are but streets or highways over water; the fee, therefore, of all such portions of the river as are crossed by bridges, is likewise in the corporation, subject to the same public easement. Not only such portion of the river as the bridge actually covers, but so much of it as is measured by the width of the street of which the bridge forms a part.

The river, the soil covered by it, and its banks, for the entire width of the street, being owned by the corporation, in fee, it is competent to them to devote them to any use which, in the judgment of its authorities, shall be deemed most promotive of the public interests, subject only to the easement for navigation, and to that universally accepted maxim, " use your own so that you injure not another."

The power to build the bridges being a necessary power, and expressly granted to the corporation, the power to regulate them—prescribe the time and manner of vessels passing through them—is a necessary incident of the power to erect them. The third section of the ordinance, therefore, is valid.

Want of time forbids our taking a more extended view of the principles which underlie this case, and to show, as we think can be satisfactorily, that neither under the power granted by the States to congress to regulate commerce with foreign nations and among the several States and with the Indian tribes, nor under any other provision of the constitution, or of any act of congress, has this power of the States over the navigable rivers exclusively within them, to render them useful for their domestic purposes, been surrendered or designed to be surrendered. And in such an effort, we would call to our aid the cases of *The Commonwealth* v. *Breed*, 4 Pick. 460; *The People, etc.* v. *Rensselaer & Saratoga R. R. Co.*, 15 Wend. 113; *Palmer* v. *Cuyahoga Co.*, 1 McLean, 226; *Williams* v. *Beardsley et al.* 2 Ind. 59; *Wilson* v. *The Black Bird Marsh Creek Co.* 2 Peters, 245; *Columbus Ins. Co.* v. *Peoria Bridge Association*, 5 McLean, 425; *The United States* v. *The New Bedford Bridge*, 1 Woodbury and Minot, 401, 508; *Gilman* v. *The City of Philadelphia*, 3 Wallace, 713; *Pollard's lessee* v. *Hagan*, 3 Howard, 230; *Martin et al.* v. *Waddell*, 16 Peters, 410.

The case of *Gibbons* v. *Ogden*, 9 Wheaton, 1, contains nothing adverse to this power of the States over such waters. It is there held, that there was much legislation connected with commerce which the States did not surrender to the general government, such as laws for regulating the internal commerce of a State, and those which respect turnpike roads, ferries, etc., and in this day, it may be added, railroads. Legislation in respect to these, can be more advantageously exercised by the States themselves. Roads and ferries are vast aids to commerce, and bridges are for the same purpose as ferries—both are highways over a water course; and if a ferry over a navigable river, established by State authority, is a proper subject of State legislation, not interfering with the power granted to congress to regulate commerce, so neither can a bridge be so considered, provided it causes no material obstruction to commerce.

274        CITY OF CHICAGO *v.* McGINN.        [Sept. T.,

Opinion of the Court.

The ordinance of the city, now in question, affords equal facilities to land and river commerce, and is obnoxious to none of the objections raised to it.

The court trying this case, seems to have entertained views quite different from those here expressed, as appears by the last instruction given for the defendant.   It is this :

"The jury are instructed, as a matter of law, that the city of Chicago was not authorized to close said Madison street bridge so as to obstruct the passage of said tug Robert Tarrant, and her said tow Wyandotte, while navigating the Chicago river, by reason of the closing of said bridge ; that the said tug Robert Tarrant, and her tow, were entitled, upon properly signaling said bridge, to have the same opened so as to allow them a free passage through the draw thereof.   And the jury are instructed, that if they find, from the evidence, that upon approaching said Madison street bridge at the date in question, said defendant, by his tug, signaled said bridge for a passage through the draw thereof, and that said bridge was closed and remained closed, and materially obstructed the passage of said tug and her tow in their navigation of Chicago river, then the defendant is not liable to any fine by authority of said plaintiff, for any collision with said bridge."

This instruction, substantially, tells the jury the city had no right to construct this bridge, and to pass this ordinance regulating the time and manner of vessels passing through it.   If they had these rights, as we have said they have, then the defendant could not claim that the bridge should be opened when he made the signal, for when he made the signal to open the bridge, the ordinance declared it should be closed, and when closed, it of necessity obstructed the passage of the vessel, but it was not an unlawful obstruction.

For the reasons given, the judgment must be reversed and the cause remanded, for further proceedings consistent with this opinion.

*Judgment reversed.*