### DISTRIBUTION OF SURPLUS OF SHEEP FUND.

Common Pleas Court of Hamilton County.

STATE OF OHIO, ON RELATION OF THOMAS L. POGUE, PROSECUTING ATTORNEY OF HAMILTON COUNTY, v. STANLEY STRUBLE, H. H. LIPPELMANN AND WALTER L. COMER, COMMISSIONERS, ET AL.

Decided, August, 1913.

*Constitutional Law—Validity of the Statutory Provision for Applying Surplus From the Sheep Fund to Aid Societies for Prevention of Cruelty.*

The provision of Section 5653, General Code, for the distribution by the county commissioners of a portion of the surplus from the sheep fund by transferring it to the society for the prevention of cruelty to children and animals, is not an application of public funds for a private purpose, but is within the limitations of the state Constitution in that respect.

*Pogue, Hoffheimer & Pogue, E. B. Gregg* and *E. P. Bradstreet,* for the demurrer.

*Pogue, Campbell & Groom,* contra.

GEOGHEGAN, J.

On demurrer to petition.

The petition herein is filed by Thomas L. Pogue, Prosecuting Attorney of Hamilton County, in his official capacity, against the county commissioners, the auditor and the treasurer of Hamilton county. It recites that the board of county commissioners on the 4th day of June, 1913, adopted a resolution wherein they authorized and directed the county auditor to draw a warrant on the county treasurer, in favor of the treasurer of the Ohio Humane Society at Cincinnati, in the sum of $3,000, and in favor of the treasurer of Hamilton County Society for the Prevention of Cruelty to Animals at Cincinnati, in the sum of $1,500, payable out of the woolgrowers fund, as provided in Section 2833, Revised Statutes of Ohio. The petition further recites that the Ohio Humane Society is a private corporation not for profit, organized under the laws of Ohio, and that one of its purposes is to prevent cruelty to children and animals and that said society has an agent in Hamilton county, appointed in pursuance of law, that the said Hamilton County Society for the Prevention of Cruelty to Animals is a private corporation not for profit, organized under the laws of Ohio for the purpose of preventing cruelty to animals in Hamilton county and has an agent in said county appointed in pursuance of law; that the provision of Section 2833, Revised Statutes, now Section 5653, General Code, pretending to grant the county commissioners authority to transfer and dispose of the surplus or excess of the fund created under the provisions of Section 5652, General Code, by giving all or a part of the excess of said fund as provided in Section 5653, General Code, to a society for the prevention of cruelty to children and animals, is unconstitutional and void, being in violation of Article I, Sections 1, 2 and 19, and Article II, Section 1, of the Constitution of the State of Ohio; and he asks for an injunction to restrain the aforesaid county officials from proceeding to so disburse said public funds.

For a second cause of action the petition recites that the Hamilton County Society for the Prevention of Cruelty to Animals was organized and incorporated for the purpose of preventing cruelty to animals only and not for the purpose of

preventing cruelty to children and animals and therefore does not come within the terms and provisions of Section 5653, General Code, as aforesaid.

However, upon the hearing of this demurrer, the assistant prosecuting attorney, who presented this case, after inspection of the charter of the Hamilton County Society for the Prevention of Cruelty to Animals, conceded that the petition was erroneous in so far as the allegations contained in the second cause of action were concerned and therefore withdrew same and consented that the demurrer might be heard as if the first cause of action constituted the entire petition in the case.

The contention made by the prosecuting attorney is that the act passed by the Legislature, providing for the distribution of the excess of the fund obtained by what is commonly known as the special tax on dogs to humane societies, was an application of public funds to private purposes and therefore wholly unconstitutional and ineffectual.

In order that a better understanding may be had of the point involved, a quotation of Sections 5652 and 5653, General Code, seems advisable.

Section 5652 reads as follows:

"In addition to the proper tax on any valuation that is fixed upon dogs by the owners, which shall be included with the personal property valuation and taxed therewith, the auditor shall levy against the owner thereof one dollar on each male and spayed female dog, and two dollars on each unspayed female dog. The receipts from such tax shall constitute a special fund to be disposed of in the payment of sheep claims, as provided by law."

Section 5653 reads as follows:

"After paying all such sheep claims, at the June session of the county commissioners, if there remain more than one thousand dollars of such fund, the excess, at such June session, shall be transferred and disposed of as follows: In a county in which there is a society for the prevention of cruelty to children and animals, incorporated and organized as provided by law, which has one or more agents appointed in pursuance of law,

all or such portion of such excess as the county commissioners deem necessary for the uses and purposes of such society, by order of the commissioners and upon the warrant of the county auditor, shall be paid to the treasurer of such society, and any surplus not so transferred may be transferred to the school fund, the poor fund, or the road and bridge fund at the direction of the county commissioners.''

It is conceded by the county prosecutor that the societies referred to above as being the proposed beneficiaries of the contemplated action of the county commissioners herein sought to be enjoined have been created and are organized under the laws of Ohio as are found and are embraced within Sections 10062 to 10076, General Code, inclusive, which in substance provide for the creation of societies for the inculcation of humane principles, the enforcement of laws for the prevention of cruelty, especially to children and animals, the acquirement of propetry, the election of officers, the employment of agents whose appointment shall be approved by the mayor of the municipal corporation, or, in case the society exists outside of the city or village, by the approval of the probate judge, both of which officers shall keep a record of such appointments, and the act further provides for certain salaries to be paid by the city, the village and the county, and the powers and duties and fees of said officers and agents.

It may be said at the outset that legislation providing for a per capita tax on dogs is not inhibited by the Constitution, and where its purpose is the protection of woolgrowers it is an exercise of police power and not the taxing power vested in the General Assembly. *Holst* v. *Roe,* 39 Ohio State, 340; *Van Horn* v. *People,* 46 Mich., 183; *Mitchell* v. *Williams,* 2 Ind., 62; *McGlone* v. *Womack,* 17 L. R. A. (N. S.), 855 (Court of Appeals of Kentucky); *Cole* v. *Hall,* 103 Ill., 31; *Tenney* v. *Lenz,* 16 Wis., 566.

It is not seriously contended that there is any objection on constitutional grounds to the creation of the fund, nor is there any objection to be made to the payment out of this fund of claims for damages done to sheep by dogs. The only question

that does. arise upon this demurrer is the question as to the right of the county commissioners to dispose of the surplus of this fund after the payment of the damage claims of sheep owners.

The Supreme Court of Michigan, in the case of *Van Horn* v. *People, supra,* recognize the right of the Legislature to encourage the raising of sheep by providing a special tax or license upon dogs over and above the tax that is placed upon them according to their valuation as property, and the further right of the proper authorities to distribute this fund in the encouragement of the sheep raising industry to the redress of those private individuals who being engaged in that industry have been injured by dogs. It must necessarily follow as a corollary to that proposition that if it be conceded that the inculcation and promotion of humane principles and the prevention of cruelty to dumb animals and children is a public purpose, the Legislature has the right to devote public funds to that purpose and that it has a right to do this through agencies the creation of which it authorizes for that very purpose.

It would be difficult to point out a vital distinction between the promotion of a purely agricultural interest and the promotion of an interest in which all the public is more directly concerned, to-wit: those principles of common humanity which require that children and dumb brutes shall not be needlessly and unconscionably tortured and oppressed.

That the incorporation and fostering of humane societies are for purposes of purely public charity seems to be unquestionable. The objects and purposes of these societies are clearly set forth in the statute as "the inculcation of humane principles, the enforcement of laws for the prevention of cruelty, especially to children and animals."

It has been repeatedly held that the prevention of cruelty to the lower order of animals is a good and charitable purpose. *Marsh* v. *Means,* 3 Jur., 790; *Obert* v. *Barrow,* 35 Chancery Div., 472. And in the case of *Massachusetts S. P. C. A.* v. *Boston,* 142 Mass., 24, at page 27. the court, in discussing the nature of a society which was incorporated under an act substantially the same as the Ohio act, uses the following language:

''The society may be properly defined as both benevolent and charitable. By the St. of 1868, c. 212, Section 8, all fines collected upon 'the complaint or information or any officer or agent of the Massachusetts Society for the Prevention of Cruelty to Animals, under this act, shall inure and be paid over to said society in aid of the benevolent objects for which it was incorporated.' The same section is re-enacted in the Statute of 1869, c. 344, Section 7. In terms, therefore, the Legislature has recognized the objects of the society as 'benevolent.'

''Without discussing the question whether the word 'benevolent' is used as substantially synonymous with 'charitable,' or disjunctively, we are of opinion that the society also comes within the definition of a charity. There is no profit or pecuniary benefit in it for any of its members; its work, in the education of mankind in the proper treatment of domestic animals, is instruction in one of the duties incumbent on us as human beings. There are charitable societies whose objects are to bring mankind under the influence of humanity, education and religion.''

In fact, the county prosecutor concedes that the object of this society is benevolent and charitable, but argues that as its creation is purely private there is no right existing in the Legislature to disburse public funds to private individuals, and relies largely upon the authority of *Auditor of Lucas County* v. *State, ex rel*, 75 Ohio State, 114, commonly known as the ''Blind Pension Act'' case. However, there is a vast distinction between the Lucas county case and the case at bar in that in the former case the Legislature arbitrarily undertook to create a class of individuals and to them distribute certain funds of the public that were raised by general taxation. In the case at bar the Legislature has as a result of the exercise of the police power produced revenue which may be more than sufficient for the purpose for which it was intended, to-wit, the protection of woolgrowers in their property and the redress of injuries done to it. What objection can there be to the employment of that surplus in the performance of that work of public charity, to-wit, the inculcation of humane principles in the care and treatment of children and dumb animals, under direction of societies or-

ganized under the general law for that purpose whose active agents are appointed and approved by.the mayor or probate judge as the case may be. It is simply providing a method of doing work through private agencies created under general laws for specific public purposes, which the state itself might do through the instrumentality of public officers.

There is no attempt made here arbitrarily to create a class of individuals and distribute state funds to them for their own uses as was attempted to be done by the legislation known as the "Blind Pension Act."

I think these societies clearly come within the view of purely public charities of a general nature as laid down by the Supreme Court of Massachusetts in the Boston case, *supra.*

The argument of the county prosecutor that the Legislature has provided no safeguards to see that this fund is properly distributed can have no effect upon the question as to the constitutionality of the act. It is not for this court to criticise the wisdom of any legislative act. It is the duty of this court in a proper case to determine whether or not an act is in conformity with the Constitution of the state and therein this court's duty ends, and if the Legislature has not seen fit to throw proper safeguards about the administration of public funds the fault is that of the Legislature alone and there is no corrective power vested in the court.

I am therefore of the opinion that the Legislature in passing the act now known as Section 5653, General Code, did not exceed its constitutional powers in providing that the excess of the fund obtained from the special tax on dogs over and above the amount paid out for sheep claims should be paid to the humane societies duly organized under the law. I would not be justified in coming to any other conclusion in view of the language of the Supreme Court of Ohio, in the case of *State of Ohio, ex rel,* v. *Ferris,* 53 Ohio State, 314, wherein the first syllabus is as follows:

"Funds raised by the taxation of franchises, rights and privileges, may be applied to purposes of general revenue, or any other purpose authorized by statute."

And at page 327, wherein the court says:

"The Constitution is silent as to the application of the fund arising on taxation on subjects other than property. The Constitution being silent, it follows that if such taxes can be levied and collected at all, that their application is within the sole and exclusive power and discretion of the General Assembly."

If there is any limitation upon this power it is that the fund shall be applied to a public purpose. That the purposes of these humane societies are public purposes is amply evidenced by the statute under which they are created and the general objects of humanity which they promote. It is immaterial that they are purely private corporations not for profit, for I am aware of no restriction upon the state exercising public functions through private agencies as long as these functions are public.

The demurrer will therefore be sustained.